**John DORADO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–91–00109–CR.**

Court of Appeals of Texas,
El Paso.

July 7, 1993.

Discretionary Review Refused Oct. 20, 1993.

Charles H. Rennick, El Paso, TX, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, TX, for State.

Before OSBORN, C.J., and KOEHLER and LARSEN, JJ.

## OPINION ON REMAND

KOEHLER, Justice.

John Dorado appeals from a conviction for the offense of injury to a child. Upon a finding of guilt, the jury assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of 27 years. On original submission, we reversed the judgment in this cause and remanded to the trial court for a new trial. *Dorado v. State*, 824 S.W.2d 794, 796 (Tex.App.—El Paso), *vacated*, 843 S.W.2d 37 (Tex.Crim.App.1992). The Court of Criminal Appeals subsequently vacated this Court's judgment and remanded this cause for our reconsideration of Dorado's second point of error.[1] *Dorado v. State*, 843 S.W.2d 37 (Tex. Crim.App.1992). After reconsidering Dorado's second point of error, we reverse the trial court judgment and remand this cause for a new trial.

## ANALYSIS

In his second point of error, Dorado contends that the trial court erred in designating Grace Camacho as the outcry witness in this cause since the State did not provide Dorado with a summary of Ms. Camacho's statement fourteen days before the date of trial as required by TEX.CODE CRIM.PRO.ANN. art. 38.-072, § 2(b) (Vernon Supp.1993). In our original opinion, we held that the State did not meet the statutory mandates of Article 38.-072, Section 2(b) because the State did not provide the statutorily-mandated written summary of the outcry statement along with its notice to Dorado. We concluded that the trial court incorrectly admitted Camacho's testimony and we *presumed* that harm exist-

---

1. This is but another of the many cases from this Court to end up in "appellate orbit." *See Coffin v. State*, 850 S.W.2d 608, 609 (Tex.App.—El Paso 1993, no pet.).

ed in the admission of Camacho's testimony. *Dorado*, 824 S.W.2d at 795–96. As noted above, we reversed Dorado's conviction and remanded the cause for a new trial. On further appeal, the Court of Criminal Appeals advised this Court that it should have analyzed harm in accordance with Rule 81(b)(2), rather than presume harm as a result of this error. *Dorado*, 843 S.W.2d at 38.

Texas Rules of Appellate Procedure 81(b)(2) mandates that an appellate court reverse a judgment under review unless the Court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the judgment. TEX.R.APP.P. 81(b)(2). The Court of Criminal Appeals articulated a coherent harmlesserror standard in *Harris v. State*, 790 S.W.2d 568, 585–88 (Tex.Crim.App.1989). An appellate court does not determine harmlessness by examining whether the evidence overwhelmingly supports a verdict of guilt; rather, the Court should calculate the error's probable impact on the jury in light of the existence of the other evidence. *Anderson v. State*, 817 S.W.2d 69, 72 (Tex.Crim.App. 1991); *Harris*, 790 S.W.2d 587–88. To reach such a determination, the appellate court should:

> [F]irst, isolate the error and all its effects, ... and second, ask whether a rational trier of fact might have reached a different result if the error and its effects had not resulted.

*Id.* at 588. In performing the isolating analysis, the Court should examine the source and nature of the error, the extent to which the State emphasized the error and the error's possible collateral implications. Further, the Court should consider how much weight a juror might place upon the error. *Id.* at 587. A conviction is tainted if the error is of such a magnitude that it disrupted the jurors' orderly evaluation of the evidence, no matter how overwhelming the evidence might have been. *Id.* at 588.

We now apply the *Harris* harmlesserror standard to calculate the probable impact of the trial court's decision to allow Grace Camacho to testify as the outcry witness in this cause. Camacho's sister, Sylvia, is married to John Dorado, the Appellant in this cause, and Camacho is the aunt of Manuel Aguilar, the complainant in this cause. At trial, Camacho described how she called the Department of Human Services on May 22, 1990, upon observing multiple bruises on Manuel's buttocks and thighs. The following day, she accompanied Manuel to the DHS offices and then to a pediatric clinic, and kept him at her home for the next few weeks.

Camacho testified that Manuel told her that John Dorado was the one who spanked him:

Q. OK. Would it be fair to say all you did was ask him who had spanked him?

A. Yes.

Q. And, he told you that his Mother had spanked him?

A. His Dad.

Q. OK. As a result of that is when you took your action?

A. Yes.

Thus, Camacho's testimony indicated that Manuel had received the bruises from John Dorado alone.

By contrast, Manuel's testimony indicated that both his father and his mother, Sylvia Dorado, had spanked him about the time that he had the bruises leading to the present cause. He also indicated that his grandmother told him not to reveal his mother's spankings to the police or his mother would go to jail.

John Dorado testified in his defense, admitting that he had spanked Manuel on several occasions prior to May 22, but not on that day. He claimed that his wife, Sylvia Dorado, spanked Manuel on May 22. When impeached with his prior statement, Dorado contended that he admitted to the final spanking because he was concerned that his wife otherwise would be put in jail. Sylvia Dorado also took the witness stand, but invoked her Fifth Amendment rights in response to any questions about who had spanked Manuel on or about May 22.

The record in this cause reflects that Camacho had more than six years' experience as a psychiatric social worker. We believe that her position of apparent authority, cou-

pled with a comparison of her testimony against the equivocal testimony of the other witnesses, undoubtably made an impact on the jury. Upon examining the record, we cannot conclude beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. *Harris,* 790 S.W.2d 568; Tex.R.App.P. 81(b)(2).

We sustain Point of Error No. Two, reverse the trial court judgment and remand this cause for a new trial.