Edward BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–92–00422–CR.

Court of Appeals of Texas,
El Paso.

July 7, 1994.

Rehearing Denied Aug. 3, 1994.

To date, we have heard nothing from Appellant's counsel.

David C. Guaderrama, El Paso County Public Defender, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for state.

Before KOEHLER, LARSEN and McCOLLUM, JJ.

### SUBSTITUTED OPINION FOLLOWING MOTION FOR REHEARING

KOEHLER, Justice.

Edward Brown, Appellant, has filed a motion for rehearing, requesting that we address all seven of his points of error rather than just the three points covered in our original opinion. We have concluded that his request has merit. Accordingly, although we are denying his motion for rehearing, we withdraw our prior opinion of May 5, 1994 and substitute the following in its place. Appellant's motion for rehearing is overruled.

Edward Brown appeals from a conviction for the offense of indecency with a child. Upon a finding of guilt, the jury assessed punishment at confinement in prison for a term of ten years and a fine of $10,000. We reverse the trial court judgment.

## FACTUAL BACKGROUND

Edward Brown was indicted for indecency with a child after he allegedly masturbated in front of Leonel Gonzalez, the complainant in this cause, who was 14 years of age at the time of the occurrence. The record reflects that Brown met Gonzalez while Brown was a campus security guard at Wiggs Middle School and Gonzalez was a student in that school's alternative program. Gonzalez testified that Brown called him during the summer of 1991 and invited him to a movie. Gonzalez accepted the invitation and ended up spending the day with Brown. Gonzalez testified that he spent part of that day at Brown's apartment and, at one point, Brown put a pornographic movie into the video recorder and laid on the bed near Gonzalez and masturbated.

## EVIDENCE OF REMOTE PRIOR CONVICTION

In his first three points of error, Brown complains that the trial court erred in denying his motion for mistrial after the State brought in evidence of a fifteen year old prior felony conviction. He cites three reasons why this evidence should not have been admitted: (1) in Point of Error No. One, Brown argues that the evidence was admitted without the prior notice required by Texas Rules of Criminal Evidence 609(f); (2) in his second point of error, he complains that it was admitted without the prior notice required by the trial court's discovery order; and (3) in his third point, he contends that the conviction was fifteen years old and its prejudicial effect was not substantially outweighed by its probative value. Brown argues that the evidence of this prior conviction was extremely inflammatory given that it was for a similar offense.

Before trial, defense counsel filed a request for notice of extraneous offenses and convictions the State planned to introduce

pursuant to Rules 609(f) and 404(b). *See* TEX.R.CRIM.EVID. 609(f) and 404(b). The trial court also entered a discovery order requiring the State to advise the defense of all prior felony convictions and misdemeanor convictions involving moral turpitude that the State intended to use to impeach the defendant. The State could comply with this discovery order merely by showing the State's file containing the defendant's rap sheet to the defense. The State complied with neither of these notice requirements.[1] The first time Brown had any notice that the State intended to use the prior conviction was *after he had taken the stand and given his direct testimony.*

■ The State argues that since Brown's defense counsel knew of the prior conviction and simply wanted notice of whether the State intended to use the prior conviction, Brown was not ambushed by the use of the prior conviction. The State relies upon *Cream v. State,* 768 S.W.2d 323, 325–26 (Tex. App.—Houston [14th Dist.] 1989, no pet.), for the proposition that Rule 609(f) exists to prevent an ambush upon an adverse party's witness when the witness has not had a fair opportunity to contest the use of a prior conviction. The *Cream* Court concluded that the lack of written notice did not preclude use of a prior conviction because "the only convictions appellant had to consider before taking the witness stand were those already known to him." *Id.*

We find the reasoning presented in *Cream* unpersuasive.[2] Rule 609(f) precludes the use of prior convictions against a witness if the proponent of such evidence fails to give advance written notice of intent to use such evidence upon a timely written request:

> Evidence of a conviction is not admissible if after timely written request by the adverse party specifying the witness or witnesses, the proponent fails to give to adverse party sufficient advance written no-

---

1. During the hearing on the motion for new trial, the defense established and the trial judge acknowledged the lack of notice:

 And it clearly appears to the Court overall that the defendant does not have any notice at the time of trial that the State intended using this prior conviction.

2. Moreover, *Cream* is distinguishable from the present cause in that it involved convictions that were not remote under Rule 609(b). *Cream,* 768 S.W.2d at 325. In the present cause, the State concedes that Brown was convicted in 1977 and released from prison in 1981. Brown was tried in the present cause in April 1992.

tice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence. TEX.R.CRIM.EVID. 609(f). In our view, the phrase "is not admissible" means mandatory exclusion in those instances where the State fails to give the requisite notice of intent. *Cf. Dorado v. State*, 860 S.W.2d 558, 559–60 (Tex.App.—El Paso 1993, pet. ref'd) (error to admit outcry witness testimony after State failed to meet the statutory notice mandate of TEX.CODE CRIM.PROC.ANN. art. 38.072, § 2(b) (Vernon Supp.1994)). If we were to read Rule 609(f) as did the *Cream* Court, the notice requirement would never apply unless a witness could show complete unawareness of his or her own prior convictions. Such an interpretation would render Rule 609(f) meaningless.

In the present cause, Brown does not contend that he was unaware of his prior conviction. But defense counsel established during the motion for new trial that she advised Brown to take the stand in part because of her belief that the remote conviction was inadmissible due to the State's lack of notice of intent to introduce the conviction, as well as the remote conviction's presumptive inadmissibility under Rule 609(b). Thus, the State appears to have ambushed Brown by allowing him to take the stand and then bringing up the issue of his prior conviction only after he had given his direct testimony. Not only were the State's "ambush tactics" unfair, they presented a clear case of discovery abuse since the State ignored both the defense counsel's request for notice of extraneous offenses and convictions, and the trial court's discovery order requiring the State to advise the defense of all prior felony convictions and misdemeanor convictions involving moral turpitude that would be used to impeach Brown.

■ Nevertheless, defense counsel's trial objections pose a problem with respect to preserving points of error concerning lack of notice. The State argues, and we agree, that defense counsel did not object that the State failed to give timely notice of its intent to use the prior conviction. The record reflects

that before cross-examining Brown, the State went on *voir dire* to obtain a ruling on whether it could impeach Brown with evidence of his prior conviction. Defense counsel argued that the probative value of admitting evidence of this prior conviction was outweighed by the prejudicial effect it would have on Brown. When the trial court ruled that the prior conviction was admissible, defense counsel objected that the admission of a fifteen year old conviction violated Brown's due process rights. Thus, Brown's defense counsel objected on the basis of Rule 609(b), but not Rule 609(f). *See* TEX.R.CRIM.EVID. 609. An objection at trial supporting one theory will not support a different theory on appeal. *Johnson v. State*, 803 S.W.2d 272, 292 (Tex.Crim.App.1990). We overrule Points of Error Nos. One and Two.

■ But defense counsel's trial objection clearly preserves Brown's third point of error: that the prejudicial effect of Brown's fifteen year old conviction was not substantially outweighed by its probative value.

■ A conviction is generally not admissible if more than ten years have elapsed since the later of the date of the conviction or of the release from confinement imposed for the conviction. TEX.R.CRIM.EVID. 609(b). But if in the interest of justice the court determines that the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial value, evidence of the conviction may be admitted. *Id.* Whether to admit remote convictions lies largely within the trial court's discretion, and depends on the facts and circumstances of each case. *Lucas v. State*, 791 S.W.2d 35, 51 (Tex.Crim.App. 1989).

In *Lucas*, the Court of Criminal Appeals addressed the fact that the trial court, after analyzing the totality of the circumstances in a case, has discretion to introduce evidence of prior convictions which became final more than ten years before. *Lucas*, 791 S.W.2d at 51. Although the *Lucas* decision focused largely on determining whether a particular witness[3] or defendant had reformed into a

---

**3.** The remote conviction in *Lucas* pertained not to an accused but to a defense witness not other-

law-abiding citizen, that Court noted some of the other circumstances to consider in reviewing a trial court's decision to admit evidence of a remote prior conviction:

> In the light of such rule, then, the age of the accused, his conduct as reflecting non-reformation on his part, the nature of the accusation and attendant facts for which he is upon trial, and the length and severity of the penalty inflicted are to be considered.

*Id.*, citing *Dillard v. State*, 153 Tex.Cr.R. 134, 218 S.W.2d 476 (Tex.Crim.App.1949). The *Lucas* Court concluded that where the defense witness was thirty-nine years old at the time of the prior offenses and was not convicted of an intervening felony or misdemeanor involving moral turpitude, the trial court erred in admitting evidence of the witness's prior convictions.

In the present cause, Brown's prior conviction for rape undisputedly falls outside the scope of the general rule since it occurred in 1977, Brown was released from prison in 1981, and the trial in the present cause occurred in 1992. Brown was thirty years old at the time of the first conviction and forty-five years old at the time of the present trial. The record lacks any evidence that Brown's conduct in the intervening years reflects non-reformation on his part, including subsequent final felony and misdemeanor convictions of moral turpitude. His prior offense is not one involving deception, such that its impeachment value would be high. *See Theus v. State*, 845 S.W.2d 874, 880–81 (Tex.Crim.App. 1992) (impeachment value of crimes involving deception higher than those involving violence). And the admission of the prior conviction poses a risk of substantial prejudice due to its similarity to the crime alleged in the present cause. After analyzing the totality of circumstances in the case, and taking into consideration that the State made no showing as to the probative value of admitting Brown's prior conviction, we conclude that the trial court abused its discretion in admitting this remote prior conviction.

 Since Texas Rules of Appellate Procedure 81(b)(2) mandates that an appellate court reverse a judgment under review unless the court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the judgment, we must decide whether harm resulted from the admission of Brown's remote prior conviction. *See* Tex.R.App.P. 81(b)(2). To do so, we apply the harmless-error standard articulated in *Harris v. State*, 790 S.W.2d 568, 585–88 (Tex.Crim.App.1989). An appellate court does not determine harmlessness by examining whether the evidence overwhelmingly supports a verdict of guilt; rather, the Court should calculate the error's probable impact on the jury in light of the existence of the other evidence. *Anderson v. State*, 817 S.W.2d 69, 72 (Tex.Crim.App.1991); *Harris*, 790 S.W.2d at 587–88. To reach such a determination, the appellate court should first isolate the error and all its effects, and then ask whether a rational trier of fact might have reached a different result if the error and its effects had not resulted. *Harris*, 790 S.W.2d at 588. In performing the isolating analysis, the reviewing court examines the source and nature of the error, the extent to which the State emphasized the error, and the error's possible collateral implications. The reviewing court further considers how much weight a juror might place upon the error. *Id.* at 587. A conviction is tainted if the error is of such a magnitude that it disrupted the jurors' orderly evaluation of the evidence, no matter how overwhelming the evidence. *Id.* at 588.

We believe that the harm of admitting Brown's remote prior conviction in the present cause was great. In arguing for admissibility of this remote prior conviction, the State stressed the very reasons that lead us to conclude that its admission was harmful to Brown:

> The purpose of 609—the purpose of allowing this kind of testimony under 609 is supported by the facts in this case in that this is the type of a offense that there are a very limited number of witnesses and the credibility comes down to this individual versus the only other witness who was

wise connected to the matters at trial. But the *Lucas* Court noted that the underlying principle

remains the same. *Id.* at 51.

there and who was the victim. The similarity between this case and the case that the defendant has admitted guilt to is very similar in nature and that they both involve children around 13 to 14 years of age. And that it has a great bearing on his credibility because of the limited number of witnesses.

Because Brown's past conviction is similar to the present offense charged, the danger is great that the jury might convict based on perception of a past pattern of conduct, rather than on the facts of the charged offense. In short, this conviction was used as pure propensity evidence of the kind eschewed in Rule 404(b). *See* TEX.R.CRIM.EVID. 404(b). Moreover, the State emphasized the prior conviction during closing argument. Because of the error's possible collateral implications and the risk posed that a jury might place great weight upon the error, we believe that this evidence could have easily impacted the jury. *Harris,* 790 S.W.2d at 587. Upon examining the record, we cannot conclude beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. *Id.* at 568; TEX.R.APP.P. 81(b)(2).

We sustain Point of Error No. Three.

▪ In his fourth and fifth points of error, Brown complains that the trial court erred in admitting into evidence two dildos and two photographs of all of the items seized during the search of his apartment, since these items were not probative of any issue in the case and any probative value was substantially outweighed by the risk of unfair prejudice. TEX.R.CRIM.EVID. 401 and 403.

When the police executed a search warrant on the apartment Brown shared with an individual named Don Ward, they confiscated 21 videotapes depicting male homosexual activity and 8 dildos. Gonzalez claimed that Brown had shown him some pornographic videotapes and two dildos before masturbating in front of him. Brown, while not contesting the existence of these items, claimed

that Gonzalez found the dildos and videotapes while snooping around in Ward's bedroom. At trial, Ward testified that the items belonged to him rather than to Brown. Brown now contends that because he did not contest the existence of the videotapes and dildos, and the testimony showed that these items did not belong to him personally, the only purpose they served as evidence was to disgust and inflame the jury.

▪ An appellate court's function is not to superimpose its own judgment as to relevance over that of the trial court, but rather, to review whether the trial court ruling constitutes an abuse of discretion. *Montgomery v. State,* 810 S.W.2d 372, 390–91 (Tex.Crim. App.1990). Because crimes do not occur in a vacuum, the dildos were relevant to set the context of the offense. Whether Ward or Brown owned these items, and whose room they were found in at the time of the search, would not be pertinent to their relevance if they were used in committing the offense or as a prelude to the offense. Given the circumstances of this cause, we cannot say that the trial court abused its discretion in admitting the items at trial. We overrule Points of Error Nos. Four and Five.

▪ In his sixth point of error, Brown complains that the trial court erred in allowing the jury to view Exhibits 6 through 33, various dildos and videotapes depicting male homosexual activity, without admitting these items into evidence.[4] Brown argues that because there was no contention that Gonzalez saw these items on the day he visited Brown's apartment, the items were irrelevant and highly inflammatory.

We agree. Unlike the dildos introduced into evidence, these additional exhibits appear to bear no relationship whatsoever to the indecency charge against Brown. Yet the State exhibited before the jury numerous items obtained during the search of Brown's apartment, having the police officer who performed the search describe each of the dildos

---

4. Exhibits 1 and 2, discussed in the previous points of error, were the dildos Gonzalez claimed to have seen on the day in question. Exhibits 6 through 11 were additional dildos seized during the search of Brown's apartment, and Exhibits 12 through 32 were videotapes seized during that same search. All of these items were displayed before the jury, although only two dildos (Exhibits 1 and 2) were actually received into evidence.

and read off the titles of such videotapes as "Head Trips," "Black Reamers," "Black Attack," "Below the Belt," "Mouthful," "Unsatisfied," and "Stiff Competition." We conclude that the trial court abused its discretion in admitting the items not related to the events surrounding the indecency charge against Brown. Moreover, given the lengthy testimony concerning these additional items, we cannot conclude beyond a reasonable doubt that the error made no contribution to Brown's conviction or to the punishment. *Harris v. State,* 790 S.W.2d 568 (Tex.Crim. App.1989); TEX.R.APP.P. 81(b)(2). We sustain Point of Error No. Six.

In his seventh point of error, Brown contends that the trial court erred in excluding Ramon Otero's testimony concerning Leonel Gonzalez' bad reputation for truthfulness and veracity. Brown argues that this testimony was proper under Texas Rules of Criminal Evidence 608(a) and, because it was excluded, Brown was prevented from effectively confronting a witness against him.

At trial, the parties took Otero on *voir dire* to determine whether he would be allowed to testify about Gonzalez' reputation for truthfulness and veracity. After some questioning, the trial judge ruled that Otero could not testify, since his knowledge of Gonzalez' reputation came solely from Mr. York, who was soon scheduled to testify at the trial. When the court made this ruling, Brown's attorney did not object, thus waiving any error on this issue. TEX.R.APP.P. 52(a); *Cisneros v. State,* 692 S.W.2d 78, 82 (Tex.Crim.App.1985); *Brooks v. State,* 642 S.W.2d 791, 798 (Tex. Crim.App.1982). We overrule Point of Error No. Seven.

### DISPOSITION

We reverse the trial court judgment and remand this cause for a new trial.