Affirmed and Opinion on Remand filed April 22, 2004









Affirmed and Opinion on Remand filed April 22, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-00-01013-CR

____________

 

HARRY
ROBERT GEUDER, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

 



 

On Appeal from the 263rd District Court

Harris County, Texas

Trial Court Cause No. 839,743

 



 

O P I N I O N   O N  
R E M A N D








Appellant Harry Robert Geuder was
convicted by a jury of the felony offense of aggregate theft.  Appellant pleaded true to two enhancement
paragraphs,[1]
and the jury assessed punishment at eighty years=
confinement in the Texas Department of Criminal Justice, Institutional
Division.  In our original opinion, we
affirmed the trial court=s
judgment without addressing the merits of appellant=s first
point.  See Geuder v. State,
76 S.W.3d 133, 135B36 (Tex. App.CHouston [14th Dist.] 2002, rev=d in part, 115
S.W.3d 11 (Tex. Crim. App. 2003).  The
Court of Criminal Appeals vacated this court=s
judgment and remanded the case for consideration of the merits of the first
point, holding that appellant preserved his complaint concerning Texas Rule of
Evidence 609(f) by requesting a definitive final ruling on a specific and
timely objection to the evidence in a hearing outside the jury=s
presence.  See Geuder v. State,
115 S.W.3d 11, 15B16 (Tex.
Crim. App. 2003).  On remand, we address
the merits of appellant=s first
point. 

I.  Facts

A statement of the operative
facts is set forth in this court=s
previous opinion,[2]
and details how, within a four-day period, appellant sought to purchase
vehicles from three different sellers and, in each case, tendered a worthless
check for payment while his companion drove away in the sale vehicle.  On a fourth occasion, a potential seller
allowed appellant=s
companion to test-drive a truck.  Once
the companion had left in the truck, appellant drove away, too.  The truck owner followed appellant and
alerted authorities.  Appellant was
arrested shortly thereafter.

II.  Issue Presented

In the only issue now before us,
appellant contends the trial court erred by allowing the State to impeach
appellant with prior convictions when the State failed to comply with appellant=s request
for pretrial notice of the State=s intent
to use the convictions.  Appellant argues
that, as a consequence, he was substantially harmed by the evidence and his
conviction should be reversed.  We find
any error in the admission of this evidence harmless.

III.  Analysis








Under Texas Rule of Evidence
609(f), A[e]vidence
of a conviction is not admissible if after timely written request by the
adverse party specifying the witness or witnesses, the proponent fails to give
to the adverse party sufficient advance written notice of intent to use such
evidence to provide the adverse party with a fair opportunity to contest the
use of such evidence.@  Tex.
R. Evid. 609(f).  In this case,
appellant, citing Rule 609(f), filed a pretrial request for no fewer than ten
days= written
notice of any prior convictions the State intended to use at trial.  During trial, after the State rested its case
but before appellant testified, appellant=s trial
counsel requested the court to instruct the State to make no inquiry into
appellant=s criminal history because the
State had provided no written notice of intent to use appellant=s prior
convictions.  The prosecutor responded
that he did not recall discussing the matter with appellant=s trial
counsel, but maintained that the State=s file
had been open for viewing by the defense. 
The trial court denied appellant=s
request.  Appellant took the witness
stand after the trial court=s
decision and the State used appellant=s
criminal record to impeach him during cross-examination.








Fifteen years ago, this court
addressed the issue of notice under Rule 609(f) in Cream v. State and
held the State=s failure to provide notice did
not violate Rule 609(f).  See 768
S.W.2d 323, 325B26 (Tex. App.CHouston [14th Dist.] 1989, no
pet.).  In doing so, this court observed
that the intent of Rule 609(f) is to prevent an ambush on an adverse party=s witness
when the party has not had fair opportunity to contest the use of the prior
convictions.  Id. at 326.  This court reasoned that, because the accused
could not claim ambush for convictions already known to him, the trial court
did not err in allowing the convictions to be used.  Id. 
This court=s
decision in Cream has been criticized by other intermediate courts of
appeals.  See Bryant v. State,
997 S.W.2d 673, 676B77 (Tex. App.CTexarkana 1999, no
pet.); Harper v. State, 930 S.W.2d 625, 630B32 (Tex. App.CHouston [1st Dist.] 1996, no
pet.); Brown v. State, 880 S.W.2d 249, 251B52 (Tex. App.CEl Paso 1994, no pet.).  But see Green v. State, 55 S.W.3d 633,
643B45 (Tex. App.CTyler 2001, pet. ref=d)
(citing Cream=s holding
and distinguishing Brown when finding appellant received notice, even
though notice was not given until well into trial); Johnson v. State,
885 S.W.2d 578, 581 (Tex.
App.CDallas 1994, no pet.) (citing Cream
for the rule=s purpose), abrogated on other
grounds by Pierce v. State, 32 S.W.3d 247 (Tex. Crim. App.
2000).  The criticism is based on the
notion that the notice requirement in Rule 609(f) would never apply unless the
witness could show he was unaware of his own convictions.  See Harper, 930 S.W.2d at 631; Brown,
880 S.W.2d at 252.  Appellant urges this
panel to revisit this court=s
decision in Cream.  Though there
might be reason to do so, it is not necessary at this time because any error in
appellant=s case is harmless.

Once a defendant testifies, he
places his credibility at issue and may thereafter be impeached like any other
testifying witness.  Dale v. State,
90 S.W.3d 826, 829 (Tex.
App.CSan Antonio 2002,
pet. ref=d).  Rule 609(a) provides that, for the purpose of
attacking the credibility of a witness, evidence that a person was convicted of
a crime shall be admissible if the prior conviction was a felony or a
misdemeanor involving moral turpitude and the court determines the probative
value of admitting the prior conviction outweighs its prejudicial effect.  Tex.
R. Evid. 609(a).[3]  








To determine whether the
erroneous admission of evidence amounts to reversible error, we look to Texas
Rule of Appellate Procedure 44.2, governing reversible error in criminal cases.[4]
 See Tex. R. App. P. 44.2. 
In this analysis, we first must determine whether the error is
constitutional.  See Tex. R. App. P. 44.2(a).  A constitutional error within the meaning of
Texas Rule of Appellate Procedure 44.2(a) is an error that directly offends the
United States Constitution or the Texas Constitution, without regard to any
statute or rule that might also apply.  See
Fox v. State, 115 S.W.3d 550, 563 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d).  With respect to the erroneous admission or
exclusion of evidence, constitutional error is present only if the correct
ruling was constitutionally required; a misapplication of the rules of evidence
is not constitutional error.  Id.  In this case, the parties dispute whether the
trial court correctly applied Rule 609(f) when it determined that the evidence
was admissible.  Excluding this evidence
was not directly required by either the Texas Constitution or the United States
Constitution.  See Bryant, 997
S.W.2d at 677 (finding error in admitting prior convictions after the State
failed to give timely notice of its intent to use them was not constitutional
error for purposes of harm analysis). 
Because any error was not a constitutional one, we analyze harm under
Texas Rule of Appellate Procedure 44.2(b).

Neither appellant nor the State bears
the burden of demonstrating whether appellant was harmed by the trial court=s
error.  See Johnson v. State, 43
S.W.3d 1, 5 (Tex. Crim. App. 2001). 
Rather, it is this court=s responsibility
to assess, from the context of the error, whether the judgment requires
reversal because the error affected appellant=s
substantial rights.  See id.; Tex. R. App. P. 44.2(b).  Error affects a substantial right when it has
a substantial and injurious effect or influence in determining the jury=s
verdict.  Johnson, 43 S.W.3d at 3B4. 








Texas courts of appeals have
taken various approaches to analyzing harm when the State has failed to respond
to a requested notice of its intent to use evidence.  In Webb v. State, this court, sitting
en banc, addressed the issue in the context of Texas Rule of Evidence
404(b).  See Webb v. State, 36
S.W.3d 164, 176B81 (Tex. App.CHouston [14th Dist.] 2000,
pet. ref=d) (en
banc).  The appellant contended the trial
court erred in admitting extraneous-offense evidence under Rule 404(b) because
the State failed to give reasonable notice as required by the rule and because
the extraneous offense did not fall within any exception under the rule.  Id. at 176, 180.  When addressing the former argument with
regard to notice, we evaluated the impact on the appellant=s ability
to present a viable defense and any other effect the untimely notice might have
had on the proceedings, i.e., whether it so hampered the appellant=s defense
that it affected a substantial right.  Id.
at 183.  Here, appellant was aware the
State planned to impeach him with his prior convictions when he took the stand
because the trial court ruled the evidence was admissible just before appellant
testified.  In addition, appellant did
not express surprise that the convictions existed nor did he contend the
description of the convictions was inaccurate. 
Appellant did not request a continuance or a delay in trial to allow
time to contest the admission of the convictions.  Thus, under the Webb analysis, we
cannot say the State=s failure
to provide notice so hampered appellant=s defense
that it affected a substantial right.    


Other courts have utilized a
general harm analysis when reviewing Rule 609(f) error.  See e.g., Bryant, 977 S.W.2d at 677; Harper,
930 S.W.2d at 631B32.  Under a general 44.2(b) harm analysis, in
assessing the likelihood that the error adversely affected the jury=s
decision, a reviewing court considers everything in the record, including all
testimony and evidence admitted for the jury=s
consideration, the nature of the evidence supporting the verdict, the character
of the error, and how the error might have been considered in connection with
other evidence in the case.  See
Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  In addition, the reviewing court may consider
the jury instructions, the State=s theory
of the case, any defensive theories, closing arguments, and voir dire.  Id. at 355B56.  Whether the State emphasized the error can
also be a factor.  Id. at
356.  And, of course, the presence of
overwhelming evidence of guilt may be considered.  Id. at 357.

Appellant contends the Rule
609(f) error affected his substantial rights to the extent that it cannot be
disregarded and points to the following factors to support this assertion:  (1) appellant was the only defense witness,
and because he denied intentionally paying the complainants for their vehicles
with worthless checks, his credibility was of paramount importance; (2) the
manner in which the prosecutor conducted his cross-examination in general; (3)
references made by the prosecutor to appellant=s past
criminal history during closing argument; and (4) the fact that the probated
offense, one of the prior convictions, and the pending indictment were all for
theft offenses.[5]  The State responds that the evidence of
appellant=s guilt was overwhelming.








At the end of cross-examination,
the State inquired into appellant=s 1979
conviction for the felony offense of criminal mischief [6]
and his 1990 conviction for unauthorized use of a motor vehicle.  The State=s inquiry
did not extend beyond appellant=s
acknowledgment that he had been convicted of the offenses and the length of his
punishment for each offense. These references to the prior convictions during
appellant=s testimony were quite brief.[7]

By contrast, the jury heard
overwhelming evidence of appellant=s guilt
in this case.  Mark John testified that, on November
4, 1999, he agreed to sell his truck to appellant and accompany him to
appellant=s bank to receive the purchase price
of $6,200 in cash.  In addition, John
consented to have appellant=s companion drive his truck to the bank, while he followed
appellant=s vehicle in another automobile.  During the twenty-mile freeway journey,
however, John lost sight of the truck and, while exiting the freeway, was
struck by appellant=s vehicle.  Appellant
then approached John=s vehicle, advised him he had an emergency, threw a check in
the amount of $6,200 into the car, and fled the scene.  After notifying police, John telephoned
appellant=s bank and was advised that the check
was invalid.  John testified that he did
not endorse or present the check for payment once he received this information
from the bank.  During his testimony,
appellant denied hitting John=s vehicle, throwing the check into his window, and leaving
the scene.  








Marvin Schwartz testified that, on November 5, 1999,
appellant induced him to sell his truck and accompany appellant to his bank to
receive the purchase price of $10,000 in cash. 
Schwartz signed over the title documents to the truck and consented to
have appellant=s companion drive it to the bank
while he followed in appellant=s vehicle.  Upon
arriving at his bank, appellant wrote Schwartz a personal check in the amount
of $9,999, and advised him to go inside and cash it.  After Schwartz disembarked, appellant drove
off hurriedly.  Appellant stated during
his testimony that he left Schwartz at the bank because he did not have a
reason to stay.  When Schwartz presented
appellant=s check to the bank for payment, he
was informed that it was worthless. 
Schwartz testified that he did not endorse the check.  Appellant later sold Schwartz=s vehicle for $1,600.  

Horace Ashabranner testified that, on November 8, 1999, he
agreed to sell his car to appellant and accompany him to appellant=s bank to receive the purchase price
of $6,250 in the form of a cashier=s check.  Ashabranner turned over the title to his
vehicle unsigned, and consented to have appellant=s companion drive Ashabranner=s car to the bank while he went with
appellant.  Upon arriving at what
appellant claimed was a branch of his bank, appellant handed Ashabranner a
personal check and instructed him to cash it while appellant waited
outside.  Ashabranner presented the
check, discovered that the bank was not a branch of appellant=s bank, and went back outside to find
both his car and appellant=s truck gone. 
Convinced the check was worthless, Ashabranner did not endorse it.  Appellant later sold Ashabranner=s vehicle for $1,600.  

Patrick Williams testified that, on December 7, 1999,
appellant sought to purchase his truck. 
After handing over the title and owner=s manual, Williams allowed appellant=s companion to test-drive the
truck.  Appellant remained behind, but
thereafter returned to his vehicle for the ostensible purpose of making a
cellular telephone call and then drove away. Williams set off in pursuit, and
managed to alert Harris County Sheriff=s deputies to his plight.  The deputies were able to apprehend
appellant. 








Appellant did not attempt to
impeach the four complainants with prior convictions or bad acts during their
testimony.  Rather, the defense=s theory
focused on appellant=s
contention that he was not aware at the time he wrote the checks that his
accounts had been closed and, as a result, he was never given an opportunity to
Amake good@ on the
checks.  In addition, the defense relied
heavily on the fact that appellant=s address
was printed on the checks, urging the jury to reason that if appellant wanted
to commit theft, he would not have given the complainants checks with his name
and address on them.  

The jury also heard testimony
from the law enforcement officer who stopped appellant and eventually arrested
him after Williams flagged down the patrol car. 
According to Officer John Trump from the Harris County Sheriff=s
Department, appellant initially told him he was purchasing the vehicle from
Williams and was out looking for appellant=s son,
whom appellant claimed had car problems. 
While Officer Trump attempted to assess the situation, appellant
commented that appellant had given his son enough time to get away in the
vehicle, he would never find the vehicle, and he was wasting his time.  Appellant denied making the statement. 

Officer Elizabeth Calhoun with
the Houston Police Department Auto Theft Division testified that when she
attempted to verify whether the check for Schwartz=s vehicle
was good, the bank informed her that the account did not exist.  Officer Calhoun testified that John,
Ashabranner, and Williams each positively identified appellant in a photo
array.[8]  A car salesman and the owner of the car lot
also identified appellant as the person who sold Schwartz=s truck
to a used-car business.  In addition,
Officer Calhoun stated that the signature on a certificate of title and power
of attorney for Ashabranner=s vehicle
misspells the name Ashabranner, leaving out the first Ar@;
Ashabranner told Officer Calhoun it was not his signature on the
documents.   








Finally, the jury heard from
Charles Yoes, a custodian of records for Citizens State Bank.  Yoes testified that the account from which
two of the checks had been written was closed in September of 1998.  The checks, written to John and Ashabranner
and signed by appellant, were dated November of 1999.  When asked whether appellant had received
notice that the bank had closed the accounts, Yoes responded that one of the
statements showed mail had been returned from a prior address and the bank did
not have a current address for appellant. 
During his testimony, appellant responded that he was never told his
accounts had been closed.      

The trial court gave an
instruction in the jury charge limiting the use of appellant=s prior
convictions to the evaluation of his credibility only.  The State=s closing
argument followed the defense=s closing
remarks, in which defense counsel reminded the jury of why the State used
appellant=s prior convictions.[9]  Though the State spent the majority of its
closing argument emphasizing the vast testimony in support of appellant=s guilt,
the State did make three references to appellant=s prior
convictions.  In one instance, the State
referred to appellant as Athe two
time [sic] ex-con who is under indictment for a felony theft offense@ when
questioning whether the jury could believe appellant.[10]  In another reference, the prosecutor
mentioned appellant=s Aprior
record@ and
again questioned appellant=s
credibility.[11]
In the third occurrence, the prosecutor referred specifically to one of
appellant=s prior convictions, stating:








[H]e is a crook.  He is a con man.  He served 15 years in prison for unauthorized
use of a motor vehicle.  I mean, it was
offensive to hear him talk and it was offensive to hear him argue with me, to
some extent he showed his true colors, and I hope, ladies and gentlemen, you
saw right through him.

 

Though the prosecutor made
multiple references to appellant=s
convictions during closing argument, when considering the overwhelming evidence
of appellant=s guilt and the fact that the State
addressed the convictions only briefly during appellant=s
testimony, we cannot say the admission of this evidence affected appellant=s
substantial rights.  Thus, any error is
harmless.  Accordingly, we overrule the
sole issue before us and we affirm the trial court=s
judgment.

 

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Opinion on Remand filed
April 22, 2004.

Panel consists of Justices Anderson, Hudson, and
Frost.

Publish C Tex. R. App. P. 47.2(b).

 

 











[1]  The
enhancement paragraphs were for appellant=s 1979
felony conviction for criminal mischief and his 1990 felony conviction for
unauthorized use of a motor vehicle.





[2]  See Geuder, 76 S.W.3d at 134.





[3]  Texas Rule of
Evidence 609(b) places a time limit on convictions used under Rule 609(a).  See Tex.
R. Evid. 609(b).  Evidence of a
conviction is not admissible if a period of more than ten years has elapsed
since the date of the conviction or of the release of the witness from
confinement, whichever is later, unless the court determines that the probative
value substantially outweighs its prejudicial effect.  Id. 
Although one of appellant=s
convictions is beyond the ten-year time period, appellant did not raise an
objection on Rule 609(b) grounds in the trial court nor does he do so on
appeal.      





[4]  Appellant
cites the former Texas Rules of Appellate Procedure for conducting a harm
analysis.  Instead, we employ a harm
analysis under current Rule 44.2.  





[5]  Although appellant
complains that the State referred to a 1995 theft offense for which appellant
received deferred adjudication probation and an indictment for theft pending at
the time of trial, neither of these incidents involves a conviction.  Rule 609(f) requires notice upon request for
use of prior convictions.  See Tex. R. Evid. 609(f) (emphasis
added).  Because appellant asserts error
under Rule 609(f) only, we do not address any error with regard to his deferred
adjudication probation or the indictment pending at the time of trial. 





[6]  The State
inquired whether appellant was convicted in 1983 of the felony offense of
criminal mischief for which he received a three-year sentence.  According to the record, appellant was
convicted of the offense in 1979, but his sentence did not begin until 1983,
after he violated his probation.





[7]  Although the State
addressed the possible range of punishment for an individual with one and two
prior felonies during voir dire, the State did not specifically mention that
any particular punishment applied to appellant=s case and made no mention
of appellant=s prior convictions at
that time.





[8]  A minor
discrepancy exists in the testimony. 
Officer Calhoun testified that she was assigned to cases involving the
vehicles of John, Ashabranner, and Schwartz. 
The prosecutor later asked whether she showed the photos to John,
Ashabranner, and Williams.  Nonetheless,
the testimony is clear that three of the complainants positively identified
appellant. 





[9]  During the
defense=s closing argument, counsel stated:

 

You heard Mr. Geuder testify that he had done about 20 deals during
that year period and admittedly there is a question of credibility.  And that=s the
reason that the district attorney brought up the fact that Mr. Geuder has got
some prior criminal history and the Judge [sic] has already indicated to you by
way of the charge [sic].





[10]  The full statement from
the trial transcript reads:

 

You know, besides you are receiving all
this information from the two time ex-con who is under indictment for a felony
theft offense in Galveston County, which, by the way, as you can probably
guess, was the warrant that he was trying to avoid that Officer Calhoun
testified about.  Do you think you can
believe a man like this?





[11]   The full statement from the trial transcript
reads:

 

[I]f the defendant testifies and you look
at his prior record and he has no evidence, nothing to support what he has to
say, nothing in writing, no bank accounts, no statements, no nothing to back up
his statements, you don=t have to believe him at
all.