**Harry Robert GEUDER, Appellant**

v.

**The STATE of Texas, Appellee.**

No. 14–00–01013–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 22, 2004.

Rehearing Overruled Aug. 26, 2004.

Jay W. Burnett, Houston, for appellant.

Donald W. Rogers, Jr., Houston, for appellee.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

**OPINION ON REMAND**

KEM THOMPSON FROST, Justice.

Appellant Harry Robert Geuder was convicted by a jury of the felony offense of aggregate theft. Appellant pleaded true to two enhancement paragraphs,[1] and the jury assessed punishment at eighty years' confinement in the Texas Department of

---

1. The enhancement paragraphs were for appellant's 1979 felony conviction for criminal mischief and his 1990 felony conviction for unauthorized use of a motor vehicle.

Criminal Justice, Institutional Division. In our original opinion, we affirmed the trial court's judgment without addressing the merits of appellant's first point. *See Geuder v. State,* 76 S.W.3d 133, 135–36 (Tex.App.-Houston [14th Dist.] 2002, *rev'd in part,* 115 S.W.3d 11 (Tex.Crim.App. 2003)). The Court of Criminal Appeals vacated this court's judgment and remanded the case for consideration of the merits of the first point, holding that appellant preserved his complaint concerning Texas Rule of Evidence 609(f) by requesting a definitive final ruling on a specific and timely objection to the evidence in a hearing outside the jury's presence. *See Geuder v. State,* 115 S.W.3d 11, 15–16 (Tex. Crim.App.2003). On remand, we address the merits of appellant's first point.

## I. Facts

A statement of the operative facts is set forth in this court's previous opinion,[2] and details how, within a four-day period, appellant sought to purchase vehicles from three different sellers and, in each case, tendered a worthless check for payment while his companion drove away in the sale vehicle. On a fourth occasion, a potential seller allowed appellant's companion to test-drive a truck. Once the companion had left in the truck, appellant drove away, too. The truck owner followed appellant and alerted authorities. Appellant was arrested shortly thereafter.

## II. Issue Presented

In the only issue now before us, appellant contends the trial court erred by allowing the State to impeach appellant with prior convictions when the State failed to comply with appellant's request for pretrial notice of the State's intent to use the convictions. Appellant argues that, as a consequence, he was substantially harmed

by the evidence and his conviction should be reversed. We find any error in the admission of this evidence harmless.

## III. Analysis

Under Texas Rule of Evidence 609(f), "[e]vidence of a conviction is not admissible if after timely written request by the adverse party specifying the witness or witnesses, the proponent fails to give to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence." Tex.R. Evid. 609(f). In this case, appellant, citing Rule 609(f), filed a pretrial request for no fewer than ten days' written notice of any prior convictions the State intended to use at trial. During trial, after the State rested its case but before appellant testified, appellant's trial counsel requested the court to instruct the State to make no inquiry into appellant's criminal history because the State had provided no written notice of intent to use appellant's prior convictions. The prosecutor responded that he did not recall discussing the matter with appellant's trial counsel, but maintained that the State's file had been open for viewing by the defense. The trial court denied appellant's request. Appellant took the witness stand after the trial court's decision and the State used appellant's criminal record to impeach him during cross-examination.

Fifteen years ago, this court addressed the issue of notice under Rule 609(f) in *Cream v. State* and held the State's failure to provide notice did not violate Rule 609(f). *See* 768 S.W.2d 323, 325–26 (Tex. App.-Houston [14th Dist.] 1989, no pet.). In doing so, this court observed that the intent of Rule 609(f) is to prevent an ambush on an adverse party's witness when

---

2. *See Geuder,* 76 S.W.3d at 134.

the party has not had fair opportunity to contest the use of the prior convictions. *Id.* at 326. This court reasoned that, because the accused could not claim ambush for convictions already known to him, the trial court did not err in allowing the convictions to be used. *Id.* This court's decision in *Cream* has been criticized by other intermediate courts of appeals. *See Bryant v. State*, 997 S.W.2d 673, 676–77 (Tex.App.-Texarkana 1999, no pet.); *Harper v. State*, 930 S.W.2d 625, 630–32 (Tex. App.-Houston [1st Dist.] 1996, no pet.); *Brown v. State*, 880 S.W.2d 249, 251–52 (Tex.App.-El Paso 1994, no pet.). *But see Green v. State*, 55 S.W.3d 633, 643–45 (Tex.App.-Tyler 2001, pet. ref'd) (citing *Cream's* holding and distinguishing *Brown* when finding appellant received notice, even though notice was not given until well into trial); *Johnson v. State*, 885 S.W.2d 578, 581 (Tex.App.-Dallas 1994, no pet.) (citing *Cream* for the rule's purpose), *abrogated on other grounds by Pierce v. State*, 32 S.W.3d 247 (Tex.Crim.App.2000). The criticism is based on the notion that the notice requirement in Rule 609(f) would never apply unless the witness could show he was unaware of his own convictions. *See Harper*, 930 S.W.2d at 631; *Brown*, 880 S.W.2d at 252. Appellant urges this panel to revisit this court's decision in *Cream*. Though there might be reason to do so, it is not necessary at this time because any error in appellant's case is harmless.

■ Once a defendant testifies, he places his credibility at issue and may thereafter be impeached like any other testifying witness. *Dale v. State*, 90 S.W.3d 826, 829 (Tex.App.-San Antonio 2002, pet. ref'd). Rule 609(a) provides that, for the purpose of attacking the credibility of a witness, evidence that a person was convicted of a crime shall be admissible if the prior conviction was a felony or a misdemeanor involving moral turpitude and the court determines the probative value of admitting the prior conviction outweighs its prejudicial effect. Tex.R. Evid. 609(a).[3]

■ To determine whether the erroneous admission of evidence amounts to reversible error, we look to Texas Rule of Appellate Procedure 44.2, governing reversible error in criminal cases.[4] *See* Tex. R.App. P. 44.2. In this analysis, we first must determine whether the error is constitutional. *See* Tex.R.App. P. 44.2(a). A constitutional error within the meaning of Texas Rule of Appellate Procedure 44.2(a) is an error that directly offends the United States Constitution or the Texas Constitution, without regard to any statute or rule that might also apply. *See Fox v. State*, 115 S.W.3d 550, 563 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd). With respect to the erroneous admission or exclusion of evidence, constitutional error is present only if the correct ruling was constitutionally required; a misapplication of the rules of evidence is not constitutional error. *Id.* In this case, the parties dispute whether the trial court correctly applied Rule 609(f) when it determined that the evidence was

---

**3.** Texas Rule of Evidence 609(b) places a time limit on convictions used under Rule 609(a). *See* Tex.R. Evid. 609(b). Evidence of a conviction is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from confinement, whichever is later, unless the court determines that the probative value substantially outweighs its prejudicial effect.

*Id.* Although one of appellant's convictions is beyond the ten-year time period, appellant did not raise an objection on Rule 609(b) grounds in the trial court nor does he do so on appeal.

**4.** Appellant cites the former Texas Rules of Appellate Procedure for conducting a harm analysis. Instead, we employ a harm analysis under current Rule 44.2.

admissible. Excluding this evidence was not directly required by either the Texas Constitution or the United States Constitution. *See Bryant,* 997 S.W.2d at 677 (finding error in admitting prior convictions after the State failed to give timely notice of its intent to use them was not constitutional error for purposes of harm analysis). Because any error was not a constitutional one, we analyze harm under Texas Rule of Appellate Procedure 44.2(b).

 Neither appellant nor the State bears the burden of demonstrating whether appellant was harmed by the trial court's error. *See Johnson v. State,* 43 S.W.3d 1, 5 (Tex.Crim.App.2001). Rather, it is this court's responsibility to assess, from the context of the error, whether the judgment requires reversal because the error affected appellant's substantial rights. *See id.;* Tex.R.App. P. 44.2(b). Error affects a substantial right when it has a substantial and injurious effect or influence in determining the jury's verdict. *Johnson,* 43 S.W.3d at 3–4.

Texas courts of appeals have taken various approaches to analyzing harm when the State has failed to respond to a requested notice of its intent to use evidence. In *Webb v. State,* this court, sitting en banc, addressed the issue in the context of Texas Rule of Evidence 404(b). *See Webb v. State,* 36 S.W.3d 164, 176–81 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (en banc). The appellant contended the trial court erred in admitting extraneous-offense evidence under Rule 404(b) because the State failed to give reasonable notice as required by the rule and because the extraneous offense did not fall within any exception under the rule. *Id.* at 176, 180. When addressing the former argument with regard to notice, we evaluated the impact on the appellant's ability to present a viable defense and any other effect the untimely notice might have had on the proceedings, i.e., whether it so hampered the appellant's defense that it affected a substantial right. *Id.* at 183. Here, appellant was aware the State planned to impeach him with his prior convictions when he took the stand because the trial court ruled the evidence was admissible just before appellant testified. In addition, appellant did not express surprise that the convictions existed nor did he contend the description of the convictions was inaccurate. Appellant did not request a continuance or a delay in trial to allow time to contest the admission of the convictions. Thus, under the *Webb* analysis, we cannot say the State's failure to provide notice so hampered appellant's defense that it affected a substantial right.

 Other courts have utilized a general harm analysis when reviewing Rule 609(f) error. *See e.g., Bryant,* 997 S.W.2d at 677; *Harper,* 930 S.W.2d at 631–32. Under a general 44.2(b) harm analysis, in assessing the likelihood that the error adversely affected the jury's decision, a reviewing court considers everything in the record, including all testimony and evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the error, and how the error might have been considered in connection with other evidence in the case. *See Motilla v. State,* 78 S.W.3d 352, 355 (Tex.Crim.App.2002). In addition, the reviewing court may consider the jury instructions, the State's theory of the case, any defensive theories, closing arguments, and voir dire. *Id.* at 355–56. Whether the State emphasized the error can also be a factor. *Id.* at 356. And, of course, the presence of overwhelming evidence of guilt may be considered. *Id.* at 357.

Appellant contends the Rule 609(f) error affected his substantial rights to the extent that it cannot be disregarded and points to

the following factors to support this assertion: (1) appellant was the only defense witness, and because he denied intentionally paying the complainants for their vehicles with worthless checks, his credibility was of paramount importance; (2) the manner in which the prosecutor conducted his cross-examination in general; (3) references made by the prosecutor to appellant's past criminal history during closing argument; and (4) the fact that the probated offense, one of the prior convictions, and the pending indictment were all for theft offenses.[5] The State responds that the evidence of appellant's guilt was overwhelming.

At the end of cross-examination, the State inquired into appellant's 1979 conviction for the felony offense of criminal mischief[6] and his 1990 conviction for unauthorized use of a motor vehicle. The State's inquiry did not extend beyond appellant's acknowledgment that he had been convicted of the offenses and the length of his punishment for each offense. These references to the prior convictions during appellant's testimony were quite brief.[7]

By contrast, the jury heard overwhelming evidence of appellant's guilt in this case. Mark John testified that, on November 4, 1999, he agreed to sell his truck to appellant and accompany him to appellant's bank to receive the purchase price of $6,200 in cash. In addition, John consented to have appellant's companion drive his truck to the bank, while he followed appellant's vehicle in another automobile. During the twenty-mile freeway journey, however, John lost sight of the truck and, while exiting the freeway, was struck by appellant's vehicle. Appellant then approached John's vehicle, advised him he had an emergency, threw a check in the amount of $6,200 into the car, and fled the scene. After notifying police, John telephoned appellant's bank and was advised that the check was invalid. John testified that he did not endorse or present the check for payment once he received this information from the bank. During his testimony, appellant denied hitting John's vehicle, throwing the check into his window, and leaving the scene.

Marvin Schwartz testified that, on November 5, 1999, appellant induced him to sell his truck and accompany appellant to his bank to receive the purchase price of $10,000 in cash. Schwartz signed over the title documents to the truck and consented to have appellant's companion drive it to the bank while he followed in appellant's vehicle. Upon arriving at his bank, appellant wrote Schwartz a personal check in the amount of $9,999, and advised him to go inside and cash it. After Schwartz disembarked, appellant drove off hurriedly. Appellant stated during his testimony

---

5. Although appellant complains that the State referred to a 1995 theft offense for which appellant received deferred adjudication probation and an indictment for theft pending at the time of trial, neither of these incidents involves a conviction. Rule 609(f) requires notice upon request for use of prior *convictions. See* TEX.R. EVID. 609(f) (emphasis added). Because appellant asserts error under Rule 609(f) only, we do not address any error with regard to his deferred adjudication probation or the indictment pending at the time of trial.

6. The State inquired whether appellant was convicted in 1983 of the felony offense of *criminal mischief for which he received a* three-year sentence. According to the record, appellant was convicted of the offense in 1979, *but his sentence did not begin until* 1983, after he violated his probation.

7. Although the State addressed the possible range of punishment for an individual with one and two prior felonies during voir dire, *the State did not specifically mention that any* particular punishment applied to appellant's case and made no mention of appellant's prior convictions at that time.

that he left Schwartz at the bank because he did not have a reason to stay. When Schwartz presented appellant's check to the bank for payment, he was informed that it was worthless. Schwartz testified that he did not endorse the check. Appellant later sold Schwartz's vehicle for $1,600.

Horace Ashabranner testified that, on November 8, 1999, he agreed to sell his car to appellant and accompany him to appellant's bank to receive the purchase price of $6,250 in the form of a cashier's check. Ashabranner turned over the title to his vehicle unsigned, and consented to have appellant's companion drive Ashabranner's car to the bank while he went with appellant. Upon arriving at what appellant claimed was a branch of his bank, appellant handed Ashabranner a personal check and instructed him to cash it while appellant waited outside. Ashabranner presented the check, discovered that the bank was not a branch of appellant's bank, and went back outside to find both his car and appellant's truck gone. Convinced the check was worthless, Ashabranner did not endorse it. Appellant later sold Ashabranner's vehicle for $1,600.

Patrick Williams testified that, on December 7, 1999, appellant sought to purchase his truck. After handing over the title and owner's manual, Williams allowed appellant's companion to test-drive the truck. Appellant remained behind, but thereafter returned to his vehicle for the ostensible purpose of making a cellular telephone call and then drove away. Williams set off in pursuit, and managed to alert Harris County Sheriff's deputies to his plight. The deputies were able to apprehend appellant.

Appellant did not attempt to impeach the four complainants with prior convictions or bad acts during their testimony. Rather, the defense's theory focused on appellant's contention that he was not aware at the time he wrote the checks that his accounts had been closed and, as a result, he was never given an opportunity to "make good" on the checks. In addition, the defense relied heavily on the fact that appellant's address was printed on the checks, urging the jury to reason that if appellant wanted to commit theft, he would not have given the complainants checks with his name and address on them.

The jury also heard testimony from the law enforcement officer who stopped appellant and eventually arrested him after Williams flagged down the patrol car. According to Officer John Trump from the Harris County Sheriff's Department, appellant initially told him he was purchasing the vehicle from Williams and was out looking for appellant's son, whom appellant claimed had car problems. While Officer Trump attempted to assess the situation, appellant commented that appellant had given his son enough time to get away in the vehicle, he would never find the vehicle, and he was wasting his time. Appellant denied making the statement.

Officer Elizabeth Calhoun with the Houston Police Department Auto Theft Division testified that when she attempted to verify whether the check for Schwartz's vehicle was good, the bank informed her that the account did not exist. Officer Calhoun testified that John, Ashabranner, and Williams each positively identified appellant in a photo array.[8] A car salesman and the owner of the car lot also identified

---

8. A minor discrepancy exists in the testimony. Officer Calhoun testified that she was assigned to cases involving the vehicles of John, Ashabranner, and Schwartz. The prosecutor later asked whether she showed the photos to John, Ashabranner, and Williams. Nonetheless, the testimony is clear that three of the complainants positively identified appellant.

appellant as the person who sold Schwartz's truck to a used-car business. In addition, Officer Calhoun stated that the signature on a certificate of title and power of attorney for Ashabranner's vehicle misspells the name Ashabranner, leaving out the first "r"; Ashabranner told Officer Calhoun it was not his signature on the documents.

Finally, the jury heard from Charles Yoes, a custodian of records for Citizens State Bank. Yoes testified that the account from which two of the checks had been written was closed in September of 1998. The checks, written to John and Ashabranner and signed by appellant, were dated November of 1999. When asked whether appellant had received notice that the bank had closed the accounts, Yoes responded that one of the statements showed mail had been returned from a prior address and the bank did not have a current address for appellant. During his testimony, appellant responded that he was never told his accounts had been closed.

The trial court gave an instruction in the jury charge limiting the use of appellant's prior convictions to the evaluation of his credibility only. The State's closing argument followed the defense's closing remarks, in which defense counsel reminded the jury of why the State used appellant's prior convictions.[9] Though the State spent the majority of its closing argument emphasizing the vast testimony in support of appellant's guilt, the State did make three references to appellant's prior convictions. In one instance, the State referred to appellant as "the two time [sic] ex-con who is under indictment for a felony theft offense" when questioning whether the jury could believe appellant.[10] In another reference, the prosecutor mentioned appellant's "prior record" and again questioned appellant's credibility.[11] In the third occurrence, the prosecutor referred specifically to one of appellant's prior convictions, stating:

> [H]e is a crook. He is a con man. He served 15 years in prison for unauthorized use of a motor vehicle. I mean, it was offensive to hear him talk and it was offensive to hear him argue with me, to some extent he showed his true colors, and I hope, ladies and gentlemen, you saw right through him.

Though the prosecutor made multiple references to appellant's convictions during closing argument, when considering the overwhelming evidence of appellant's guilt and the fact that the State addressed the convictions only briefly during appellant's testimony, we cannot say the admission of this evidence affected appellant's substantial rights. Thus, any error is harmless. Accordingly, we overrule the sole issue

---

**9.** During the defense's closing argument, counsel stated:

> You heard Mr. Geuder testify that he had done about 20 deals during that year period and admittedly there is a question of credibility. And that's the reason that the district attorney brought up the fact that Mr. Geuder has got some prior criminal history and the Judge [sic] has already indicated to you by way of the charge [sic].

**10.** The full statement from the trial transcript reads:

> You know, besides you are receiving all this information from the two time ex-con who is under indictment for a felony theft offense in Galveston County, which, by the way, as you can probably guess, was the warrant that he was trying to avoid that Officer Calhoun testified about. Do you think you can believe a man like this?

**11.** The full statement from the trial transcript reads:

> [I]f the defendant testifies and you look at his prior record and he has no evidence, nothing to support what he has to say, nothing in writing, no bank accounts, no statements, no nothing to back up his statements, you don't have to believe him at all.

before us and we affirm the trial court's judgment.