

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| GARY LANDERS, | § | No. 08-14-00100-CR |
| Appellant, | § | Appeal from the |
| v. | § | 158th District Court |
| THE STATE OF TEXAS, | § | of Denton County, Texas |
| Appellee. | § | (TC# F-2010-1639-B) |
| | § | |

## **O P I N I O N**

Appellant Gary Landers is a retired law-enforcement officer. He was indicted for the murder of Richard Benovic. Appellant asserted self-defense at trial. A jury found Appellant guilty, implicitly rejecting his claim of self-defense. We conclude the evidence was sufficient to establish that Appellant intended to shoot Richard causing his death, and that Appellant's conduct was not justified by self-defense. We also conclude the trial court did not err in admitting testimony that Appellant had attempted to establish a paper trail for a future self-defense claim. Finally, we conclude the trial court properly instructed the jury on self-defense. Accordingly, we affirm.[1]

---

[1] This case was transferred from our sister court in Fort Worth, and we decide it in accordance with the precedent of that court to the extent required by TEX. R. APP. P. 41.3.

# BACKGROUND

Richard Benovic was married to Ana Benovic, and they had two children. In December 2009, Appellant responded to Ana's posting on an online dating website. Appellant and Ana began communicating by email and phone, and before meeting in person, discussed the possibility of Ana moving in with Appellant. Ana informed Appellant that Richard had physically abused her.

Ultimately, Appellant helped Ana prepare *pro se* divorce papers, and they first met in person at the courthouse in early January 2010, when Appellant helped Ana file the divorce papers. According to Ana, when the divorce papers were served on Richard, he ripped them up, threw them on the floor, and "stormed off," but did not touch, grab, or hit her.

At the end of January, Appellant helped Ana and her children move out of their house and into his home in Paint Rock. Appellant secured the assistance of two law-enforcement personnel to ensure the move was peaceful. Ana testified she had not informed Richard about the move because Richard had a bad temper and she feared he would be very angry and "do something stupid." Although Richard became angry and confrontational when he learned that Ana and the children were moving out that day, Ana testified he never became physical with her, Appellant, or any of the law-enforcement personnel assisting with the move. Ana agreed that Richard's anger that day was justified.

Appellant testified that after the move, he and Richard spoke by telephone, and Richard threatened to kill him. Appellant advised Richard not to threaten him, told him he carried a gun, and warned Richard never to attack him. Appellant alleged that on other occasions, Richard used suggestive colloquialisms, such as "I'm going to take care of you," "You'll be sorry when I'm

2

done with you," and "I'm going to punch your lights out," but admitted that Richard never again directly threatened to kill him. Ana testified that Richard could not control his feelings and would call Appellant names, but she never saw Richard put his hands on Appellant.

In the following months, Ana and Richard arranged custodial exchanges of the children. Appellant would accompany Ana and her children in a van during the multi-hour car trip to the exchange destination, which typically occurred on the grounds of various law-enforcement agencies where security cameras were present. Ana testified that Richard did not own a gun and never carried a gun, and Appellant testified Ana had informed him of this and that he never saw Richard with a weapon during any of the exchanges.

Appellant testified that during his 32 years in law enforcement, he had received hundreds of hours in firearms training.[2] Appellant testified that during his law-enforcement career, he had drawn his weapon but had never used deadly force. Because of his retired status as a law-enforcement officer, Appellant was permitted to carry a gun, which he routinely carried wherever he would go. Appellant had made many arrests as a law-enforcement officer, and agreed that officers learn how to "size up" the individuals with whom they engage. In his online dating profile, Appellant described himself as six-feet, two-inches tall, and weighing over 200 pounds. Appellant estimated that Richard was five-feet, nine-inches tall, and approximately 240 to 250 pounds.

On May 7, 2010, Ana and Appellant met Richard in a parking lot at the Denton County Police Department for a custody exchange of the children. For this exchange, the children would remain in the van, and Richard and Ana would simply exchange vehicles. Appellant testified that

---

[2] Appellant was certified as a Federal Law Enforcement Training Center instructor, had provided law-enforcement training to various groups including the FBI's Joint Terrorism Task Force, and had testified as a court-certified expert in various facets of criminal justice.

3

during this exchange, he saw Richard getting into the driver's side of the van they had driven to the location and believed that Richard was leaving with the children. Appellant asserted he was at the driver's side door of Richard's vehicle helping Ana make seat adjustments, when he saw Richard walking aggressively toward him with his hands in fists at his sides and his chest puffed out. Appellant testified Richard's chest hit both the open car door and Appellant. Appellant yelled at Richard to stop, directed Richard to "back off" approximately ten times, and proceeded to place his hand in front of Richard. According to Appellant, Richard continued to press into him until Appellant's hand was jammed against his own chest. Appellant pushed back and placed his hand on his gun where Richard could see it. Richard again approached Appellant a second time, and Appellant drew his gun. Richard retreated four or five steps backward, allegedly said, "Oh, cute, a gun," and indicated that he was going to call 911. Richard, who allegedly was still close enough to hit Appellant, then lifted up his elbow and pulled back an empty fist. Appellant testified he was afraid Richard would knock him out and take his gun or "just finish beating [him] up with his hands," and that he knew he couldn't stand up to Richard in a fistfight, so he leaned back and discharged his gun three times, killing Richard almost instantly.

The jury found Appellant guilty of murder, implicitly rejecting his self-defense theory, and sentenced him to 13-years' confinement.

## DISCUSSION

### Sufficient Evidence Supported the Jury's Rejection of Appellant's Claim of Self–Defense

In his first issue, Appellant contends the evidence was legally insufficient to allow the jury to reject his claim of self-defense, and that no rational juror could have found against him on that issue.

4

### *Standard of Review and Applicable Law*

A person commits murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes death. TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (West 2011). Texas recognizes the general defense of justification, which excludes criminal responsibility for otherwise criminal behavior. *Id.* § 9.02 (West 2011). Self-defense is one form of justification. *Id.* § 9.31 (West 2011). A person is justified in using deadly force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force, and when and to the degree that he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *Id.* § 9.32(a) (West 2011).

The defendant has the initial burden to produce some evidence to support a claim of self-defense. *See Zuliani v. State,* 97 S.W.3d 589, 594 (Tex.Crim.App. 2003); *Shannon v. State*, __S.W.3d__, 2015 WL 6394922, at *3 (Tex.App. – El Paso Oct. 21, 2015, no pet.). But once the defendant produces some evidence of self-defense, the burden shifts to the State to prove the elements of the offense beyond a reasonable doubt and to persuade the jury that the defendant did not act in self-defense. *Zuliani,* 97 S.W.3d at 594-95; *Saxton v. State,* 804 S.W.2d 910, 913 (Tex.Crim.App. 1991); *Shannon*, __S.W.3d at __, 2015 WL 6394922, at *3. Self-defense is a fact issue to be determined by the jury, and the jury is free to accept or reject any defensive evidence on the issue. *Saxton,* 804 S.W.2d at 913-14; *Shannon*, __S.W.3d at __, 2015 WL 6394922, at *3.

5

We review the legal sufficiency of the evidence to support a jury's rejection of a self-defense claim under the *Jackson v. Virginia* standard.[3]  *Shannon*, __S.W.3d at __, 2015 WL 6394922, at *3 (applying standard to jury's rejection of self-defense claim); *Smith v. State,* 355 S.W.3d 138, 144 (Tex.App. – Houston [1st Dist.] 2011, pet. ref'd) (same); *see also Saxton,* 804 S.W.2d at 914 (distinguishing standard of review for defensive claims in which State bears the burden of persuasion and affirmative defenses in which defendant bears the burden of proof). Under that standard, a reviewing court must examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Shannon*, __S.W.3d at __, 2015 WL 6394922, at *3.  In self-defense cases, this requires a court to review all of the evidence presented at trial in the light most favorable to the prosecution to determine if any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt.  *Saxton,* 804 S.W.2d at 914; *Shannon*, __S.W.3d at __, 2015 WL 6394922, at *3.  Further, the court must defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony, as the jury is the sole judge of those matters.  *Jackson,* 443 U.S. at 326, 99 S.Ct. at 2793; *Brooks v. State,* 323 S.W.3d 893, 899–900 (Tex.Crim.App. 2010) (plurality op.); *see also Shannon*, __S.W.3d at __, 2015 WL 6394922, at *3.

---

[3] Appellant does not claim the evidence of self-defense is factually insufficient.  We therefore do not apply the factually insufficient standard of review discussed in *Zuliani*.  *See Zuliani*, 97 S.W.3d at 595 ("we hold that when a defendant challenges the factual sufficiency of the rejection of a defense, the reviewing court reviews all of the evidence in a neutral light and asks whether the State's evidence taken alone is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence").

*Analysis*

The trial court instructed the jury on the definition of self-defense in accordance with the applicable law, and further instructed the jury that if it found that the State had failed to prove, beyond a reasonable doubt, that Appellant was acting in self-defense, it "must find the defendant 'not guilty'." In finding Appellant guilty of murder, the jury rejected Appellant's claim of self-defense. *Saxton,* 804 S.W.2d at 914 (a jury's guilty verdict "is an implicit finding rejecting the defendant's self-defense theory"); *Shannon*, __S.W.3d at __, 2015 WL 6394922, at *4. Appellant argues, however, that no rational jury could have rejected his claim of self-defense, asserting that he presented conclusive evidence to support that claim and that the State did not meet its burden of disproving the claim beyond a reasonable doubt.

In support of his argument, Appellant points to evidence that Richard had a propensity to violence, as shown by his physical abuse of Ana, and that once Appellant had rescued Ana, Richard turned his threats of violence on Appellant, as shown by his direct threat to kill Appellant and "even telling his young daughter he would kill the Appellant[.]" Appellant also contends the evidence demonstrated that on the day of the shooting, Richard was the aggressor, rushing at Appellant and running into Appellant's hand and the vehicle door with his chest. And, while Richard backed off to an extent, he got "right back in the appellant's face" and took "a more aggressive stance," indicating an attack was imminent. Appellant testified he realized that Richard was capable of causing him serious bodily injury even without a weapon. Appellant argues that to conclude he was not justified in using his gun to shoot Richard under these circumstances would "render the concept of self-defense meaningless."

7

Appellant misconstrues the State's burden on self-defense. The State has the burden of *persuasion* in disproving the defendant's evidence of self-defense. *Saxton,* 804 S.W.2d at 913. "That is not a burden of *production*, i.e., one which requires the State to affirmatively produce evidence refuting the self-defense claim, but rather a burden requiring the State to prove its case beyond a reasonable doubt." *Id*. (emphasis in original). Further, "the issue of self-defense is an issue of fact to be determined by the jury." *Id*. Whether a defendant's evidence on self-defense is credible "is solely within the jury's province and the jury is free to accept or reject the defensive evidence." *Id.* at 914.

Appellant testified that he discharged his gun three times causing Richard's death, when Richard, who was unarmed, allegedly lifted up his elbow and pulled back an empty fist. On cross-examination, Appellant admitted that he caused the death of Richard by shooting him with a firearm, an act clearly dangerous to human life. On these facts alone, a rational jury could have found beyond a reasonable doubt against Appellant on the self-defense issue. *Id.* (holding jury could have reasonably found against defendant on self-defense when he testified he pulled the trigger when the unarmed deceased lunged at him, even though no firearm was found on deceased and defendant testified he did not intend to kill the deceased).

In any event, the State presented other evidence to support the jury's rejection of Appellant's theory of self-defense. An Abilene police officer testified about an alleged disturbance that Appellant reported, which occurred during a similar child custody exchange two months before the shooting. Despite Appellant's statement in his 911 call that the situation might require him to use pepper spray on Richard, when the Abilene police officer quickly arrived on the scene, he did not discover an on-going disturbance. Rather, the officer found that Appellant had

8

overstated any threat by Richard, that no criminal offense had occurred, that Appellant was wrongly attempting to portray Richard as the aggressor, that Appellant's repeated insistence that a report be prepared "got to the point of being absurd," and that it was apparent that Appellant's objective was to ensure that his 911 call was documented. The Abilene police officer concluded that he had never seen a more clear attempt to lay a paper trail for a claim of self-defense for a future event. The jury could have rationally considered this evidence in rejecting Appellant's claim that he shot Richard in self-defense two months later.

More importantly, the jury also viewed a video recording of the shooting from one of the Denton Police Department security cameras which shows both vehicles pulling into the parking lot, as well as Richard falling after being shot. In the video, it is apparent that the shooting did not take place near the inner door area of the vehicle, as claimed by Appellant, but in an open area of the parking lot, and that Appellant stepped toward Richard before Richard collapsed to the ground. The jury could have reasonably concluded from this video that, contrary to Appellant's testimony, Richard was not the aggressor, had not rushed Appellant and pinned his arm and the vehicle door, and that Appellant was not justified in using deadly force under the circumstances. Issue One is overruled.

**Sufficient Evidence Supported the Mens Rea Element of Murder**

In Issue Two, Appellant contends the evidence is insufficient to show he intentionally or knowingly shot Richard in order to support the *mens rea* element of the murder charge. We disagree.

Appellant argues in particular that the State did not present any evidence that he "intended or knew that the result of his actions would be death or serious bodily injury," but rather the

9

"evidence points only to the appellant's intent to defend himself." Essentially, Appellant is contending that as long as his use of deadly force was in self-defense, that use was not proof that he intentionally or knowingly caused Richard's death by shooting him with a firearm, as alleged in the indictment. As noted above, however, the jury properly rejected Appellant's claim of self-defense, and thus Appellant has no "self-defense" premise to support his conclusion.

In any event, self-defense is simply one form of justification "for otherwise criminal behavior." *Hernandez v. State*, No. 05-06-01238-CR, 2008 WL 588902, at *3 (Tex.App. – Dallas Mar. 5, 2008, pet. ref'd) (mem. op., not designated for publication). Thus, even if Appellant had prevailed in his self-defense claim, that finding would have shown only that he was justified in his otherwise criminal behavior; it would not have negated that he intentionally or knowingly shot Richard.

Regardless, Appellant admitted that he caused Richard's death by shooting him with a firearm, an act clearly dangerous to human life, and the evidence demonstrated that he did so at close range. This alone was sufficient to support a rational jury's finding beyond a reasonable doubt that Appellant intentionally caused Richard's death. *See Threadgill v. State*, 146 S.W.3d 654, 663 (Tex.Crim.App. 2004) (evidence showing appellant fired a deadly weapon at close range at the victim who was lying or sitting in the backseat of a car was sufficient to support a rational jury's finding beyond a reasonable doubt that appellant intentionally caused the victim's death); *Herrin v. State*, 125 S.W.3d 436, 440 (Tex.Crim.App. 2002) (evidence that defendant shot victim at close range in the vital organs established that defendant had intent to murder him); *Womble v. State*, 618 S.W.2d 59, 64 (Tex.Crim.App. 1981) ("where a deadly weapon is fired at close range and death results the law presumes an intent to kill"). Issue Two is overruled.

**The Trial Court Properly Admitted Evidence of Appellant's Attempt
to Create a Paper Trail for a Future Self-Defense Claim**

In Issue Three, Appellant contends the trial court abused its discretion when it admitted, over his Rule 403 objection, the following testimony of Abilene Police Officer Duff Phipps concerning an incident that occurred between Appellant and Richard during a March 14, 2010 custody exchange two months before the shooting:

> After the -- the incident was over, I was speaking with Officer Janusz and I told him that I had never seen a more clear attempt to lay a paper trail for a defense of self-defense for a future event.

### *Applicable Law*

Pursuant to Rule 403, the trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. Rule 403 creates a presumption of admissibility of all relevant evidence and authorizes a trial judge to exclude that evidence only when there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer v. State,* 296 S.W.3d 555, 568 n.39 (Tex.Crim.App. 2009) (quoting *Conner v. State,* 67 S.W.3d 192, 202 (Tex.Crim.App. 2001)). "Unfair prejudice" does not mean the evidence injures the opponent's case, because that is the central point of offering evidence. Rather it refers to "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *Rogers v. State,* 991 S.W.2d 263, 266 (Tex.Crim.App. 1999) (quoting *Cohn v. State,* 849 S.W.2d 817, 820 (Tex.Crim.App. 1993)).

Where a proper Rule 403 objection is made, the trial court must conduct a balancing test. *Rojas v. State,* 986 S.W.2d 241, 250 (Tex.Crim.App. 1998); *Knight v. State*, 457 S.W.3d 192, 204 (Tex.App. – El Paso 2015, pet. ref'd). A Rule 403 analysis in the present case would include the following relevant factors: (1) how probative the evidence is; and (2) the potential of the

evidence to impress the jury in some irrational, but nevertheless indelible way. *Shuffield v. State,* 189 S.W.3d 782, 787 (Tex.Crim.App. 2006); *see also Gigliobianco v. State,* 210 S.W.3d 637, 641-42 (Tex.Crim.App. 2006).

### *Standard of Review*

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Henley v. State*, 493 S.W.3d 77, 82-83 (Tex.Crim.App. 2016). A trial judge abuses her discretion when her decision falls outside the zone of reasonable disagreement. *Id.* at 83. Unless we determine that the trial court's balancing of the factors is outside the zone of reasonable disagreement, we will not overrule the trial court's Rule 403 analysis. *Rodriguez v. State,* 203 S.W.3d 837, 843 (Tex.Crim.App. 2006).

### *Officer Phipps's Testimony*

Officer Phipps testified that on March 14, 2010, two months before the shooting, he was instructed to assist an Officer Janusz who had been dispatched to a disturbance in the parking lot of the law-enforcement center where Officer Phipps worked. The person who called in the disturbance was "threatening to have to use pepper spray," and Officer Phipps assumed it was a disturbance in progress. Officer Phipps arrived at the scene within 30 seconds. However, there was "[n]ot a whole lot" going on when he arrived.

Officer Phipps spoke with Appellant, who had made the 911 call and was standing in the parking lot. Appellant showed his identification and identified himself as a retired federal agent. Appellant described to Officer Phipps how Richard had been aggressive toward him, that he did not "have to take it" and would defend himself, and began to articulate "a steady parade" of circumstances and events that had occurred elsewhere on other occasions. Officer Phipps found

12

Appellant's comments odd under the circumstances because nothing was happening, the individuals in the vehicles were calm and quiet, and there was no on-going disturbance. He asked Appellant why he would need to defend himself under these circumstances. In response, Appellant provided a lengthy explanation why he was concerned for his safety, and how Richard was aggressive and dangerous. When Appellant asked whether a report would be made, Officer Phipps explained that a criminal report would be filed only if a criminal offense had been committed, and that he did not find a criminal offense had occurred. Officer Phipps testified that Appellant's repeated insistence that a report be prepared "got to the point of being absurd." Officer Phipps stated that it became apparent to him that the objective of this scenario was to ensure that some sort of documentation be created concerning Appellant's 911 call.

When the prosecutor asked whether Officer Phipps had "some sort of present sense impression of that that you shared with Officer Janusz," Appellant objected and was allowed to voir dire Officer Phipps outside the presence of the jury to determine if Officer Phipps was qualified to offer his opinion as an expert. On voir dire, Officer Phipps explained that he had informed Officer Janusz that he had never seen a more clear example of trying to lay a paper trail for a self-defense claim at a later time. Officer Phipps based his opinion on his 28 years' law-enforcement experience. Amid numerous other objections, Officer Phipps explained that his opinion was based on several factors, including his conversation with Appellant, Appellant's request that everything be documented, and his need to constantly ask Appellant to step back from the van.

At one point during the voir dire, Appellant also objected to the admission of Officer Phipps's opinion on the ground its prejudicial effect far outweighed its probative value. The trial

court ruled that Officer Phipps's opinion was admissible as lay opinion testimony under Rule 701, but had questions regarding the admission of Officer Phipps's opinion under Rule 403. Under further voir dire examination, Officer Phipps testified that identification of the primary aggressor is important in a self-defense claim, and although Appellant insisted Richard had been the primary aggressor, his observations did not bear that out. Further, Appellant's insistence in discussing all of the prior custody-exchange events struck him as curious. Officer Phipps agreed Appellant was overstating Richard's threat on that day, and explained that Appellant's articulation of the prior events appeared to be embellished because "it just didn't fit together." To Officer Phipps, it appeared that Appellant was "trying way too hard" to make him believe Richard was the primary aggressor. The trial court ultimately overruled Appellant's Rule 403 objection because Officer Phipps's observations allowed him to formulate an opinion as a layperson, because his opinion was rationally based on his perceptions, and because his opinion was helpful to the determination of a fact in issue.

Back in the jury's presence, Officer Phipps testified that when he spoke with Officer Janusz following their encounter with Appellant, he informed Officer Janusz that he had never seen a more clear attempt to lay a paper trail for a claim of self-defense for a future event.

### *Analysis*

Appellant argues the jury could have used "the subjective conclusion of one police officer, relayed to another officer concerning a completely separate event occurring on a much earlier occasion . . . as relevant to their determination" whether he "acted in self-defense ten months later[.]" He asserts the evidence had the potential to impress the jury in some irrational but nevertheless indelible way. We disagree.

14

As an initial matter, we note that Appellant is not complaining about Officer Phipps's testimony in general. He complains only about Officer Phipps's ultimate conclusion, as expressed to Officer Janusz, that he had never seen a more clear attempt to lay a paper trail for a claim of self-defense for a future event. Thus, all of Officer Phipps's observations from the incident on March 14, 2010—that he did not find a criminal offense had occurred, that Appellant's repeated insistence that a report be prepared "got to the point of being absurd," and that it was apparent that Appellant's objective was to ensure that his 911 call was documented—were properly before and considered by the jury in rendering its verdict. Appellant also does not complain that the trial court erred in admitting Officer Phipps's conclusion as lay opinion testimony under Rule 701. *See* TEX. R. EVID. 701 (if a witness is not testifying as an expert, his opinion testimony is limited to opinions rationally based on the witness's perception and helpful to determining a fact in issue).

It also does not appear Appellant is arguing that Officer Phipps's opinion testimony was not relevant. Indeed, testimony that Appellant was attempting to lay a paper trail for a claim of self-defense for a future event would tend to make it more probable that he was not acting in self-defense when he intentionally or knowingly caused Richard's death less than two months later. *See Henley*, 493 S.W.3d at 84 (evidence is irrelevant only if no issue in the case could be influenced by the proffered evidence); TEX. R. EVID. 401 (evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence); TEX. PENAL CODE ANN. § 19.02 (West 2011) (a person commits the offense of murder if he "intentionally or knowingly" causes the death of an individual); TEX. PENAL CODE ANN. § 9.32(a) (West 2011) (a person is

15

justified in using deadly force against another when and to the degree he "reasonably believes" the force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force).

Appellant appears, rather, to attack the probative force of Officer Phipps's opinion evidence. Appellant argues that the incident involving Officer Phipps was "a completely separate event" too remote in time, making it of limited probative value to establish whether he "acted in self-defense ten months later[.]" The record is clear, however, that the incident involving Officer Phipps occurred on March 14, 2010, less than two months before the shooting on May 7, 2010. And, rather than being "a completely separate event," the March 14, 2010 incident was also a child custody exchange at the parking lot of a law-enforcement facility in which Richard, Ana, and Appellant were all present, just like on the day of the shooting. Further, Officer Phipps expressed his opinion to Officer Janusz immediately following the March 14 incident, which gave it even more probative force, since it demonstrated that Officer Phipps did not form his opinion in hindsight, but rather developed his opinion solely from the events of the March 14 incident. In sum, Officer Phipps's opinion was highly probative concerning Appellant's intent, when less than two months later he shot Richard , and concerning whether he did so in self-defense.

It is the second factor of the Rule 403 balancing test, the potential of the evidence to impress the jury in some irrational yet indelible way, that Appellant asserts is critical in assessing the trial court's Rule 403 balancing test. He first argues that Officer Phipps's testimony was clearly prejudicial and could impress a jury in an irrational way because Phipps is a police officer whose testimony, by virtue of his profession, may impress jurors. Certainly, Officer Phipps's opinion prejudiced Appellant's case, but as noted above, evidence is not unfair because it injures

16

the opponent's case, since that is the central point of offering evidence. Rather the evidence must have an undue tendency to suggest a decision on an improper basis. *Rogers,* 991 S.W.2d at 266.

In this regard, Appellant argues the evidence had the potential to impress the jury in some irrational and indelible way, because "the State introduced the evidence with the hope the jury would envision Officer Phipps earlier belief as prophetic" and that the subsequent encounter between Richard and Appellant "was the fulfillment of his prophecy." The record shows, however, that rather than being a mere prophetic belief, Officer Phipps's opinion was rationally based on his observations of Appellant's behavior on March 14 and his years of law-enforcement experience. Further, Officer Phipps's admission that he did not know what had happened between Appellant and Richard before he arrived on the scene went to the weight of his opinion, and did not undermine the rational basis of his opinion that he had never seen a more clear attempt to lay a paper trail for a claim of self-defense for a future event.

Appellant relies heavily on our decision in *Brown v. State*, 880 S.W.2d 249, 252 (Tex.App. – El Paso 1994, no pet.), in support of his argument that the probative value of Officer Phipps's opinion was substantially outweighed by the danger of unfair prejudice. *Brown*, however, was an extraneous-offense case in which we reversed the defendant's conviction for indecency with a child because the trial court admitted evidence of defendant's fifteen-year-old rape conviction. *Id*. at 251. We determined that the State had failed to show the fifteen-year-old rape conviction had any probative value to establish the charged offense (whether defendant had masturbated in front of a young teen boy), and that the danger was great the jury might convict based on the perception of a past pattern of conduct, rather than on the facts of the charged offense. *Id*. at 252-54. Officer Phipps's opinion, on the other hand, did not concern a remote, extraneous

17

offense unrelated to the charged offense, but rather was evidence concerning an incident that occurred less than two months before the charged offense and was directly related to the charged offense and Appellant's defense to that charge.

Further, *Brown* involved the application of Rule 609, which allows the admission of evidence of convictions older than ten years "only if its probative value . . . substantially outweighs its prejudicial effect." TEX. R. EVID. 609(b). In contrast, Rule 403 applies the opposite standard: it allows the exclusion of evidence only if its probative value is substantially outweighed by its prejudicial effect. TEX. R. EVID. 403. Thus, in *Brown* the trial court could admit the old conviction only if the State demonstrated its probative value substantially outweighed its prejudicial effect, while in the present case the trial court could exclude Officer Phipps's opinion only if its probative value was substantially outweighed by its prejudicial effect. Accordingly, we find Appellant's reliance on *Brown* is misplaced.

We conclude the evidence did not have an undue tendency to impress the jury in an irrational way or to suggest a decision on an improper basis, and that the trial court could have reasonably determined that the probative force of Officer Phipps's opinion was not substantially outweighed by the danger of unfair prejudice. *See Hammer*, 296 S.W.3d at 568 n.39 (Rule 403 mandates the exclusion of evidence only when there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value") (quoting *Conner,* 67 S.W.3d at 202). Accordingly, we conclude the trial court did not abuse its discretion in overruling Appellant's Rule 403 objection and in allowing Officer Phipps to testify concerning his opinion that during the March 14 incident, Appellant was attempting to lay a paper trail for a future claim of self-defense. Issue Three is overruled.

18

## Jury Charge on Self-Defense

As is typical in Texas when self-defense is raised, the trial court instructed the jury in the charge to first determine whether Appellant intentionally or knowingly caused Richard's death, and then to determine whether the State had proved that Appellant's conduct was not justified by self-defense:

> If you have found that the state has proved beyond a reasonable doubt the offense of Murder, you must next decide whether the state has proved that the defendant's conduct was not justified by self-defense.

In Issue Four, Appellant contends that this instruction "illogically required" the jury to find him "guilty" of murder as a prerequisite to finding him "not guilty" of murder, which he contends is "exactly the kind of Texas jury instruction condemned by the United States Supreme Court in *Penry v. Johnson*, 531 U.S. 1002 [sic], 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001)." Appellant argues that it "simply does not make sense to require the jurors to find a defendant guilty of murder, as a pre-requisite to a verdict of not guilty." We conclude the trial court did not err in instructing the jury to first determine whether the State proved the offense of murder before addressing whether Appellant's conduct was justified by self-defense.

### *Standard of Review*

Appellate review of purported error in a jury charge involves a two-step process. *Kirsch v. State,* 357 S.W.3d 645, 649 (Tex.Crim.App. 2012). We first determine whether error occurred; if error did not occur, our analysis ends. *Ngo v. State,* 175 S.W.3d 738, 743 (Tex.Crim.App. 2005); *Hailey v. State,* 413 S.W.3d 457, 495 (Tex.App. – Fort Worth 2012, pet. ref'd). This first step should not be limited to a review of just one part of the charge in isolation. *Selvage v. State,* 680 S.W.2d 17, 20 (Tex.Crim.App. 1984); *see also Martinez v. State*, No. 08-13-00363-CR, 2016

19

WL 2864952, at *6 (Tex.App. – El Paso May 13, 2016, no pet. h.) (not designated for publication).

Second, if error occurred, we then evaluate whether sufficient harm resulted from the error to require reversal. *Kirsch,* 357 S.W.3d at 649; *Ngo,* 175 S.W.3d at 743; *Hailey,* 413 S.W.3d at 495.

*Analysis*

Contrary to Appellant's contention, the charge did not require the jury to find Appellant "guilty" of murder before considering his claim of self-defense. Rather, as to the ultimate finding of guilt, the jury was instructed first that if the state failed to meet its burden of proof on self-defense, it should find the defendant "not guilty." Viewing the charge as a whole bears this out.

As Appellant correctly points out, the jury was first instructed that if it found Appellant intentionally or knowingly caused the death of Richard by shooting him with a firearm (or did so with the intent to cause serious bodily injury), it was to then consider "whether the state has proved that the defendant's conduct was not justified by self defense." After instructing the jury on the law of self-defense applicable to this case, the charge again similarly instructed the jury that "[i]f you have found that the state has proved beyond a reasonable doubt the offense of Murder, you must next decide whether the state has proved that the defendant's conduct was not justified by self-defense." The charge then instructed the jury that to decide the issue of self-defense, it must determine whether the State proved either that Appellant did not believe his conduct was immediately necessary to protect himself against Richard's use or attempted use of unlawful deadly force, or that Appellant's belief was unreasonable. It was only then that the charge specifically instructed the jury on its finding of "guilty" or "not guilty":

> If you find that the state has failed to prove, beyond a reasonable doubt, at least one
> of the two elements listed above, you must find the defendant "not guilty."

20

> If you all agree that the state has proved, beyond a reasonable doubt, each of the elements of the offense of Murder, and you believe, beyond a reasonable doubt, that the defendant did not act in self-defense, you must find the defendant "guilty."

As is apparent, in specifically addressing "guilt," the jury charge first instructed the jury that it should find the defendant "not guilty" if the state failed to meet its burden of proof on self-defense, and thus did not require the jury to first find Appellant "guilty" of murder before considering whether he was "not guilty" due to his claim of self-defense.

Even if the charge as a whole could be construed as requiring the jury to find Appellant guilty of murder as a prerequisite to finding him not guilty of murder, we would not consider it illogical on nonsensical, as claimed by Appellant. As recognized by our sister court in Dallas, "Texas recognizes the general defense of justification, which excludes criminal responsibility for otherwise criminal behavior." *Hernandez*, 2008 WL 588902, at *3 (citing TEX. PENAL CODE § 9.02). Self-defense is one form of justification for otherwise criminal behavior. TEX. PENAL CODE ANN. § 9.31(a) (West 2011) ("a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force"). Likewise, a person "is justified in using deadly force against another" when and to the degree he reasonably believes the force is immediately necessary to protect himself "against the other's use or attempted use of unlawful deadly force[.]" *Id.* § 9.32(a) (West 2011). Because self-defense is a justification for otherwise criminal or unlawful conduct, it is logical that a jury would first be required to consider whether the state had proved that unlawful conduct has occurred before considering whether that unlawful conduct was justified as self-defense under the Texas statutory scheme.

21

Nor do we find that this order of findings is condemned by *Penry*, which unlike this case addressed the adequacy of penalty-phase jury instructions in a death-penalty case regarding the jury's consideration of mitigating evidence of mental impairment and childhood abuse. *Penry v. Johnson*, 532 U.S. 782, 786-92, 121 S.Ct. 1910, 1914-18, 150 L.Ed.2d 9 (2001). *Penry* held that a supplemental jury instruction to consider the mitigating evidence was insufficient because the statutorily mandated "special issues" the jury was required to answer for the death penalty to be imposed did not, by their terms, allow the jury to consider and "give effect to" the mitigating evidence. *Id*. at 797-99, 121 S.Ct. at 1920-22. In *Penry*, the Court determined that the combination of instructions was insufficient because they "made the jury charge as a whole internally contradictory, and placed law-abiding jurors in an impossible situation" where "it would have been both logically and ethically impossible for a juror to follow both sets of instructions." *Id*. at 799, 121 S.Ct. at 1921-22. No such deficiency exists here. Unlike in *Penry*, the jury charge in the present case did not make it logically impossible for the jurors to follow the trial court's instructions on both murder and self-defense. Rather, the jury charge, when considered in its entirety, clearly instructed and allowed the jury to consider whether the State had met its burden on both murder and self-defense.[4] Issue Four is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

STEVEN L. HUGHES, Justice

October 12, 2016

Before McClure, C.J., Rodriguez, and Hughes, JJ.

---

[4] In any event, we could not conclude Appellant was harmed by the way the jury was charged, because he essentially conceded that he intentionally shot Richard, but that he was justified in doing so in self-defense. Thus, the order in which the jury considered Appellant's guilt would have had no impact on its ultimate verdict.

22

(Do Not Publish)